UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

OLIVER WEBB IV,

                    Plaintiff,                          Case No. 2:21-cv-147

v.                                                     Honorable Robert J. Jonker

UNKNOWN BINNER et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action originally brought in a single action by thirteen state prisoners under 42 U.S.C. § 1983.  The Court severed that action into thirteen separate actions, and Plaintiff Webb filed an amended complaint in this action.  Plaintiff previously sought and was granted leave to proceed *in forma pauperis.*

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's First Amendment retaliation and Eighth Amendment conditions of confinement claims for failure to state a claim against all Defendants.  Plaintiff's Eighth Amendment excessive force claims will proceed.

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan.[1]  The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.  Plaintiff sues Warden Erica Huss, Sergeants Unknown Whitlar and Bemister, and Correctional Officers Unknown Binner, Unknown Lamentola, Unknown Miller, and Unknown Jarvis.[2]

Plaintiff's amended complaint is similar to but distinguishable from the amended complaints filed by the other twelve original plaintiffs.[3]  Plaintiff alleges that during the early morning hours of October 20, 2020, the Emergency Response Team (ERT) at MPB was trying to remove an inmate from C-Block.  (ECF No. 18, PageID.193.)  Plaintiff avers that the ERT chose to use alternative force, and that inmates "locking on the segregation side began to inquire as to the method of [extraction]."  (*Id.*)  These inmates were "confirmed for having the COVID-19 virus[] by healthcare personnel before and during this instant incident."  (*Id.*)  Plaintiff claims that the officers involved consisted of Defendants Jarvis, Binner, Lamentola, Miller, Whitlar, and Bemister.  (*Id.*)

_____

[1] Although Plaintiff did not submit a notice of change of address, the Court utilized the MDOC's Offender Tracking Information System (OTIS) to locate Plaintiff.  Plaintiff is reminded that it is his obligation to keep the Court apprised of his current address.  *See* W.D. Mich. LCivR 41.1.

[2] Although Plaintiff names "Unknown Javaris" as a Defendant in the caption of his amended complaint, he refers to this Defendant as Jarvis throughout the body of his amended complaint.  The Court, therefore, adopts this spelling of this Defendant's name.

[3] The Court notes that all thirteen of the amended complaints appear to have been drafted in substantial measure by one plaintiff, Larry M. Stovall.  Many of the allegations are identical in all of the amended complaints.  The allegations that differ concern whether the individual plaintiff made certain complaints or heard another inmate make those complaints.

Plaintiff told the Defendants, "Please don't spray any chemical that will make it harder on me, I'm battling COVID-19." (*Id.*)  His request, however, was ignored. (*Id.*)  Plaintiff claims that around 2:00 a.m., Defendants Jarvis, Binner, Lamentola, Miller, Whitlar, and Bemister, while masked and equipped with shields, "attacked" the inmate in cell First-21 while he was asleep. (*Id.*, PageID.194.)  These Defendants "stormed the inmate's cell, firing multiple rounds of tear gas and pepper spray." (*Id.*)  Plaintiff claims that the tear gas and pepper spray "quickly saturated the cell like a cloud of poisonous gas." (*Id.*)  Plaintiff claims that the situation was "exasperated" by the fact that C-Block uses a central ventilation system, so the tear gas and pepper spray carried throughout the block. (*Id.*)

Plaintiff "immediately started to complain to the Defendants about difficulty breathing." (*Id.*)  He asked for help and requested medical attention. (*Id.*)  Plaintiff could hear another inmate complaining of severe chest pains and requesting medical attention. (*Id.*)  Defendant Binner responded, "You guys will be alright." (*Id.*)  Plaintiff stated, " I was already sick.  Please call health care." (*Id.*)  Defendant Lamentola then stated, "Well, you guys like complaining and writing grievances well there you go." (*Id.*, PageID.195.)  Plaintiff responded, "How hard is it to just open the windows and frontside fans?" (*Id.*)  Defendant Miller stated, "We turned on the shower fan.  You guys will be ok.  Just relax." (*Id.*)  Plaintiff responded that the shower fan was doing "absolutely nothing." (*Id.*)  Another inmate called out that he was asthmatic and needed health care for chest pains and shortness of breath. (*Id.*)  Defendant Jarvis stated, "You guys should have thought about that before destroying Neebish Unit."[4] (*Id.*)  Plaintiff responded, "That has absolutely nothing to do with anything.  I need medical." (*Id.*)  Defendant Jarvis

---

[4] Neebish Unit is one of the housing units at Chippewa Correctional Facility (URF).  On September 13, 2020, residents of Neebish Unit engaged in a major disturbance, causing significant damage to the unit.  (ECF No. 1, PageID.9.)  Following the incident, many URF prisoners, including the original 13 plaintiffs, were transferred to MBP.

responded that they were "busy" and that if they were in need of health care, then "perhaps you guys shouldn't have destroyed Neebish Unit." (*Id.*)  Plaintiff continued to have chest pains and trouble breathing.  (*Id.*)  He and other inmates continued to request health care and ask why the officers used tear gas and pepper spray.  (*Id.*, PageID.196.)  Defendant Lamentola responded, "You guys came as a unit.  We will deal with you as a unit.  You guys should think about that the next time you all destroy a unit." (*Id.*)

Defendant Whitlar made rounds in C-Block later that morning.  (*Id.*)  Plaintiff tried to stop him, but Defendant Whitlar just stated, "You are fine." (*Id.*)  Other inmates asked, "Why didn't you just move these inmates who are asthmatic?" (*Id.*)  Defendant Whitlar responded, "We followed all the protocols.  You guys will be fine." (*Id.*, PageID.197.)  Plaintiff asked Defendant Whitlar about the protocols when a sick prisoner requests healthcare, especially after being gassed. (*Id.*)  Defendant Whitler responded, "You are alright," then left the unit.  (*Id.*)

Defendant Bemister also made rounds of C-Unit, and Plaintiff claims that he would not stop at his cell.  (*Id.*)  Plaintiff stated, "I'm having trouble breathing.  Staff will not call healthcare." (*Id.*)  As Defendant Bemister walked off, he responded, "We have grievances.  If you guys need healthcare, write a kite to them." (*Id.*)

Plaintiff alleges that Defendant Huss made rounds segregation rounds on C-Block on October 24, 2020.  (*Id.*)  During her rounds, inmates "began to question regarding the chemical agents being released." (*Id.*)  Defendant Huss responded, "You guys are overreacting.  Remember you all wouldn't be here, if you all didn't destroy Neebish Unit." (*Id.*, PageID.198.)  Inmates "began to curse and scream at Defendant Huss." (*Id.*)  She stated, "I'm not concerned with any of that.  I'm only concerned about keeping staff, and finding staff to work the prison." (*Id.*)  Plaintiff and other inmates responded, "Your staff sprayed chemical agents in the air[,] and then refused to

open any windows, or provide any medical treatment." (*Id.*) Defendant Huss responded, "I don't see anything wrong with their conduct. But what I do take issue with is you guys not following the rules." (*Id.*) Defendant Huss did not finish her rounds. (*Id.*)

Plaintiff generally asserts that inmates transferred to the MBP facility had engaged in protected conduct when making verbal complaints and filing grievances between September 14, 2020, when they arrived at MBP, and October 20, 2020, the date of the incident. He alleges that he also made verbal complaints and filed grievances, but he does not say when. He alleges further that Defendants were deliberately indifferent to the substantial risk of injury to him by releasing chemical agents in his unit when they knew that Plaintiff had tested positive for COVID-19. Plaintiff also contends that the use of chemical agents amounted to excessive force, and that Defendants' refusals to open windows afterwards and refusals to call health care violated the Eighth Amendment. Finally, Plaintiff avers that Defendants conspired to violate his and other inmates' First and Eighth Amendment rights. He seeks compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **First Amendment Retaliation Claims**

Plaintiff alleges that he made oral complaints and filed grievances but he does not say where or when he made the complaints or filed the grievances.  He sweepingly alleges that Defendants' actions were taken in retaliation for his protected First Amendment conduct.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element, Plaintiff alleges that other prisoners filed civil rights lawsuits, which constitutes protected conduct.  *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).  Plaintiff's allegations that he was engaged in protected conduct, therefore, fail to show that he filed any lawsuit, much less one that was nonfrivolous.

Plaintiff also alleges that he engaged in protected conduct presumably prior to the October 20, 2020, incident by submitting unspecified written and oral grievances.  An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).  "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form."  *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).  Plaintiff, however, utterly fails to state when he filed his grievances, against whom, and about what.  Plaintiff, therefore, fails to allege any facts whatsoever suggesting that his complaints were

nonfrivolous.  Plaintiff's conclusory allegations without specific factual allegations fail to state a

claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Because Plaintiff

fails to allege facts suggesting that he was engaged in protected conduct, his retaliation claims fail

at the first step of the inquiry.

Plaintiff also fails to allege facts to support an inference that his grievances and

complaints prompted the incident of which he complains.  Nothing in the amended complaint even

suggests that Defendants were aware of his grievances and complaints.  His allegations, therefore,

fall short at the third element.  Plaintiff's First Amendment retaliation claims will, therefore, be

dismissed.

### B.    Eighth Amendment Claims

Plaintiff also raises a series of Eighth Amendment claims.  First, Plaintiff avers that

Defendants violated the Eighth Amendment by releasing chemical agents to extract another

prisoner in the unit, asserting that the use of such agents amounted to deliberate indifference to his

serious medical needs because he had tested positive for COVID-19.[5]  Second, Plaintiff claims

that Defendants released the chemical agents strictly to punish inmates for engaging in unrest in

the Neebish Unit.  Third, Plaintiff alleges that Defendants violated his Eighth Amendment rights

by failing to open the windows or call health care after releasing the chemical agents.

The Eighth Amendment imposes a constitutional limitation on the power of the

states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it

---

[5] Plaintiff appears to allege that Defendants' conduct also violated the Eighth Amendment because multiple prisoners on the unit had significant symptoms of COVID-19 and asthma.  Plaintiff, however, lacks standing to assert the constitutional rights of other prisoners.  *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992).  As a layman, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners.  *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).  The Court, therefore, considers only the claims specific to Plaintiff.

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate

health or safety." *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Release of Chemical Agent

Plaintiff first contends that Defendants violated the Eighth Amendment by using pepper spray and tear gas to extract another inmate in Plaintiff's housing unit, despite knowing that Plaintiff had tested positive for COVID-19.  Plaintiff alleges that Defendants' conduct amounted to deliberate indifference to his serious health or safety concerns.

The Sixth Circuit has held that the risk of contracting COVID-19 meets the objective prong of the deliberate indifference standard, requiring prison officials to take reasonable measures to avoid prisoners' exposure to the illness.  *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020).  The court, however, has never held that, once a prisoner tests positive for COVID-19, he must be treated as if he is at significant risk of serious harm from any circumstance that could aggravate a respiratory condition, even if he is not experiencing respiratory symptoms.  It is commonly recognized that a significant percentage of persons who test positive for COVID-19 remain asymptomatic throughout the course of infection.  *See* Centers for Disease Control & Prevention, *Estimated COVID-19 Burden*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/burden.html (updated Nov. 16, 2021) (estimating ranges of asymptomatic cases for those 0 to 64 years at 5%–24% and for 65 years and older at 5%–32%); *Magnitude of asymptomatic COVID-19 cases throughout the course of infection: A systematic review and meta-analysis*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7987199 (Mar. 2021) (estimating that 25% of

10

infections remain asymptomatic).[6] In addition, even those individuals who experience respiratory symptoms at some point during the course of the illness may not have such symptoms at any particular time. As a result, as with all Eighth Amendment claims, it is an individual prisoner's circumstances that determine whether he is at substantial risk of serious harm.

Courts routinely have concluded that officers do not typically violate the serious medical needs of one prisoner by using pepper spray to extract an inmate from a nearby cell. *See Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018) (finding that no case supported the conclusion that a prison official violates the rights of an inadvertently and indirectly exposed inmate when the official attempts to secure a different, uncooperative prisoner by the use of tear gas); *Handy v. City of New York*, No. 19-CV-3885, 2021 WL 4482548, at *4 (S.D.N.Y. Aug. 27, 2021) (holding that courts of the district repeatedly had found that "'the secondhand inhalation of pepper spray by persons who were not the intended targets of the discharge does not typically give rise to a constitutional claim'") (quoting *Gutierrez v. City of New York*, No. 13-CV-3502, 2015 WL 5559498, at *8 (S.D.N.Y. Sept. 21, 2015) (collecting cases); *Allen v. Bosley*, 253 F. App'x 658, 659–60 (9th Cir. 2007) (holding that use of pepper spray on another inmate does not of itself violate the rights of a neighboring inmate); *Lindsey v. Boughton*, No. 17-cv-52, 2018 WL 3824143, at *4 (W.D. Wis. Aug. 10, 2018) (holding that "even direct exposure to pepper spray typically

---

[6] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

results in severe but temporary discomfort that does not pose a long-term health risk") (citing *Boyce v. McKnight*, No. 14-cv-418, 2015 WL 8778330, at *10–11 (N.D. Ill. Dec. 15, 2015)). Indeed, courts have held that, when the only symptoms of exposure to chemical agents is to cause a prisoner to cough, choke, gag, and experience burning to the eyes—"the transitory effects of the pepper spray"—a plaintiff's allegations are insufficient to meet the objective prong of the Eighth Amendment standard. *Allen*, 253 F. App'x at 660; *see also McDougald v. Esham*, No., 2018 WL 1010214, at *11 (S.D. Ohio Feb. 21, 2018) (absent particular vulnerability to chemical-agent exposure or a serious medical need beyond the normal effects of pepper-spray exposure, indirect exposure to chemical agents does not rise to the level of an Eighth Amendment violation); *McGuire v. Union Cnty. Jail*, No. 4:13-CV-P28, 2013 WL 4520282, at *5–6 (W.D. Ky. Aug. 26, 2013) (plaintiff failed to show how complaints of eye burning and runny nose after being pepper sprayed rose to the level of a "sufficiently serious" medical need); *Censke v. Unknown Ekdahl*, No. 2:08-cv-283, 2009 WL 1393320, at *8 (W.D. Mich. May 18, 2009) (plaintiff's complaints of "burning in his nose, lungs, eyes and skin . . . do not constitute a serious medical need for purposes of the Eighth Amendment"); *Reeves v. Sweet*, No. 1:04-cv-605, 2005 WL 2417659, at *4 (W.D. Mich. Sept. 30, 2005) ("although [p]laintiff complains that he had breathing difficulties [after secondhand exposure to pepper spray], he has failed to present facts demonstrating that those difficulties were sufficiently different in degree or type from those experienced by others exposed to the spray, and he has asserted no adverse medical consequences from the exposure.").

In the instant case, Plaintiff asserts no allegation that he was suffering from any respiratory or other symptoms on October 20, 2020, when tear gas and pepper spray were used to extract the other inmate. Plaintiff also fails to allege that he experienced more than the ordinary and transient symptoms of exposure to chemical agents. As a result, Plaintiff fails to demonstrate

that Defendants were deliberately indifferent to his serious medical needs.  Accordingly, his Eighth

Amendment claim based upon Defendants' use of chemical agents will be dismissed.

> ### 2.     Deliberate Indifference—Denial of Medical Care and Failure to Mitigate Exposure to Chemical Agent

Plaintiff also contends that Defendants violated the Eighth Amendment by failing

to call health care despite his requests.  He also contends that Defendants failed to take measures

to mitigate his exposure to the chemical agents, such as by opening windows and turning on fans.

Plaintiff contends that these failures amounted to deliberate indifference to his serious medical

needs because Defendants "knew or should have known that the COVID-19 virus attacks the

respiratory system" and should have known that he had tested positive.  (ECF No. 18, PageID.200–

01.)

Plaintiff's allegations concerning Defendants' failure to provide medical care or

mitigate the effects of the chemical agents, like his allegations regarding release of the chemicals,

fail to rise to the level of deliberate indifference.  Plaintiff fails to allege facts that would support

the objective prong of the Eighth Amendment standard.  "Because society does not expect that

prisoners will have unqualified access to health care, deliberate indifference to medical needs

amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Hudson*, 503 U.S.

at 9 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–104 (1976); *see also Blackmore v. Kalamazoo

Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (the objective component requires the existence of a

"sufficiently serious" medical need) (quoting *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104).

A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as

mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention."  *Gunther v. Castineta*, 561 F. App'x 497, 499 (6th Cir. 2014) (quoting

*Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).  "Routine discomfort" does not rise to the level of a serious need.  *Hudson*, 503 U.S. at 9 (citing *Rhodes*, 452 U.S. at 347).

As previously discussed, Plaintiff makes no allegation that he suffered more than the usual, transitory effects of tear gas or pepper spray to which he was exposed only indirectly. *See Allen*, 253 F. App'x at 660; *McDougald*, 2018 WL 1010214, at *11; *McGuire*, 2013 WL 4520282, at *5-6; *Censke*, 2009 WL 1393320, at *8; *Reeves*, 2005 WL 2417659, at *4.  He does not allege that he was actively sick with COVID-19 or that he was otherwise particularly vulnerable to indirect exposure. *McDougald*, 2018 WL 1010214, at *11.  He alleges no adverse effects on his health either due to the exposure or due to any delay in the mitigation of the chemical exposure or the provision of health care.  *See Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted) (recognizing that, in order to allege an Eighth Amendment claim based on delay of medical treatment, a plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment").  Thus, because Plaintiff fails to allege supporting the objective prong of the deliberate indifference standard, his Eighth Amendment claim concerning failure to provide medical care and mitigate exposure to chemical agents will be dismissed.

### 3.    Excessive Force

Plaintiff suggests that Defendants used excessive force when they unnecessarily employed multiple rounds of tear gas and pepper spray to extract another inmate, thereby causing Plaintiff to be indirectly exposed to the chemicals.  Plaintiff also alleges that Defendants acted to punish him and other inmates by refusing to take available actions, such as opening windows and turning on facts, to dissipate the chemicals.

As discussed, the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor

may it contravene society's "evolving standards of decency."  *See Rhodes*, 452 U.S. at 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification."  *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment.  *Rhodes*, 452 U.S. 347.  The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied.  *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response.  *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).  A prisoner's claim of excessive force must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g., Whitley*, 475 U.S. at 321–22.

Plaintiff alleges that Defendants used pepper spray and tear gas when it was unnecessary to extract the prisoner, used an excessive amount of pepper spray, and refused to take

simple remedial action, such as opening windows and turning on fans, to dissipate the chemicals. Plaintiff also alleges statements by various Defendants that suggest that Defendants' actions and inactions were intended to punish all residents of the unit, some of whom had been involved in the destruction of Neebish Unit.  Plaintiff, therefore, has set forth a colorable excessive force claim against Defendants.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's First Amendment retaliation and Eighth Amendment conditions of confinement claims will be dismissed with prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's Eighth Amendment excessive force claims remain in the case.

An order consistent with this opinion will be entered.


Dated:    February 9, 2022            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE